IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

---

In the matter of:        )
                            )
D&G Auto Sales, Inc.,    ) Case No. 08-81385
                            ) May 12, 2008, 1:23 p.m.
    Debtor               ) Decatur, AL

---

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JACK A. CADDELL
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:                     Cynthia R. Slate-Cook
                                   Slate Cook & Waters
                                   P.O. Box 1344
                                   Decatur, AL 35602

                                   Jesse Vogtle
                                   Jeremy L. Retherford
                                   Balch & Bingham
                                   P.O. Box 306
                                   Birmingham, AL 35201-0306

                                   Richard Blythe
                                   Bankruptcy Administrator
                                   P.O. Box 3045
                                   Decatur, AL 35602

---

Electronic Recorder
Operator:                       MeShae Bogue

Transcriber:                   Patricia Basham
                                   6411 Quail Ridge Drive
                                   Bartlett, TN 38135
                                   9O1-372-O613

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

1    THE COURT: Let's have the attorneys and the parties

2 come up to the counsel table and let's go on the record in the

3 case of D&G Auto Sales, Inc.  I have three matters set today:

4 The Debtor's motion for authorization to use cash collateral;

5 an objection by Auto Finance Partners, LLC, and a motion by

6 Auto Finance Partners, LLC, to dismiss the case or, in the

7 alternative, motion to appoint a trustee and motion to lift

8 stay.

9    So I understand the parties talked briefly about a

10 settlement but were unable to reach one, so probably we –

11    MS. COOK: No, sir, we have now reached an agreement.

12    THE COURT: Oh, you have?

13    MS. COOK: Yes, sir.  Well, just in the last thirty

14 seconds we have, Your Honor.

15    MR. VOGTLE: Fifteen.

16    MS. COOK: Fifteen, ten.  I am not sure how Mr. Vogtle

17 wants to proceed.

18    MR. VOGTLE: Judge, Jesse Vogtle for the movant, Auto

19 Finance Partners.  We appreciate you having such quick hearings

20 on all of this.  We have been busy for the last week filing

21 things over in Judge Paler's court, getting temporary

22 restraining orders granted there.  In fact, we were able to

23 serve one of the witnesses in here today with the TRO.

24    But we are here to announce what I hope will be a

25 settlement.  The settlement will be subject to this court

1  entering an order and that order becoming final and
2  nonappealable.

3        THE COURT: Let me ask you this and let me jump ahead
4  a little bit.  Will this settle the entire case?

5        MS. COOK: Yes, sir, this will – part of the settlement
6  will be the dismissal of this Chapter 11 proceeding.

7        MR. VOGTLE: The terms of settlement are, Judge, that
8  my client has a security interest in just about everything that
9  D&G, and another company called Comfort Car over in Georgia,
10  possesses.  The terms of the settlement will be that Mr. and
11  Mrs. Elrod will not show up at either facility unless invited
12  by us; that their employees will not show up at either facility
13  unless invited by us; that they will turn over the keys to all
14  of the inventory, the inventory being cars.  These are used car
15  lots.  They will turn over the cars in both states, Georgia and
16  Alabama.  That they will give us the security codes that they
17  apparently use to turn off automobiles, which is effectively a
18  repossession when someone is not paying.

19        My client will post a security guard immediately at
20  both locations.  There will be a ten thousand dollar payment,
21  Judge, by the secured lender to Mr. and Mrs. Elrod, essentially
22  to walk away and, in return, the secured lender is also going
23  to give a release, a complete release of any further
24  obligations under the note and any other claims they may have
25  related to the note.

1    We do understand that the employees and Mr. and Mrs.

2    Elrod may have some personal possessions in both locations and

3    they will be allowed to come back on site for the specific

4    purpose of getting those, but that will be done in the

5    accompaniment of my client or its agent or a security guard to

6    make sure that nothing that's defined as collateral walks away.

7    Mr. Elrod will, as president of D&G Auto, and also as

8    an officer of Comfort Car, will draft a letter to his employees

9    that essentially tells them that he is effectively turning over

10   the business and that they are to cooperate with us in the

11   transition.

12   Likewise, Mr. Elrod will help us in getting a letter

13   to the customers, the end user, the purchaser of the

14   automobile, in both the Georgia and Alabama stores where he

15   advises them that they are to make all future payments and any

16   disputed payments to an address that Auto Finance partners will

17   provide.  You may recall on some of the papers filed, Your

18   Honor, we wrote a UCC, article nine letter, only to be

19   confronted with another letter from Mr. Elrod that said don't

20   send your payments there.  So we are going to clear up that mud

21   a little bit.

22   THE COURT: Okay.

23   MR. VOGTLE: Mr. Elrod is going to agree and provide

24   us, as quickly as possible, and I am meaning in the next 24

25   hours, a complete inventory and location of all vehicles and

1   collateral.

2          MR. ELROD: Excuse me, sir. I can't do that because I

3   have not been running this business since last year. There is

4   the man that has been running it. I can't do that. I don't

5   know where it is, okay. Maybe he does. I don't.

6          MR. VOGTLE: All right. Well, we will work –

7          MR. ELROD: I will do everything I can to help you to

8   what I know.

9          MR. VOGTLE: All right. Ryan Livingston, a witness we

10   were going to call here today, was an officer with – (Pause).

11   Well, Judge, Mr. Livingston was actually terminated April 1.

12   So we don't know what has been going on with the books and

13   records since that time and, in fact, my client has not

14   received any cash from the debtor during that whole time. So

15   we need to work through that issue.

16          Mr. Elrod and his wife are the owners and officers of

17   the company and are really in the best position to provide us

18   that information.

19          MS. COOK: And they will cooperate. That was our

20   agreement, and they will give you the list of inventory of

21   everything that they know where it is.

22          MR. VOGTLE: Okay. All right. Auto Finance Partners

23   will get fourteen days to gather all the collateral and leave

24   the premises in both Georgia and Alabama. We understand that

25   they are both leased properties.

1    MS. COOK: Yes.  Well, I can't speak to Georgia but

2    Alabama is.

3    MR. VOGTLE: But we will have no obligation whatsoever

4    to pay any rent during that fourteen-day period and we are

5    going to pack up our cars and leave.

6    MS. COOK: Your Honor, there is one other issue.  Mr.

7    Elrod, he has the bill of sales for four vehicles that he

8    purchased from the debtor corporation and they are in his

9    possession and they are four older models and have a retail

10   value of about seventy-two hundred dollars.

11   THE COURT: Altogether or apiece?

12   MS. COOK: Yes, sir, altogether, all four of them.

13   They are 2001, 2000 vehicles, seven to eight years old.  What

14   he would like is the creditor is holding the titles and for the

15   creditors to deliver the titles to my office and then, in turn,

16   Mr. Elrod would bring a cashier's check to my office that I

17   would turn over to Mr. Vogtle.

18   THE COURT: For the value?

19   MS. COOK: Yes, sir.

20   MR. ELROD: That may not be correct.  It may a little

21   bit be off.  I don't remember.  I have the bills of sale at my

22   office at my home, and I will let you know what they are.

23   MS. COOK: That value is at cost is my understanding.

24   (Off-the-record briefly.)

25   MS. COOK: Your Honor, that issue has been settled and

1  we would ask that that be concluded within the fourteen days

2  also.  Is that all right?

3          THE COURT: No problem.

4          MR. VOGTLE: Judge, as I understand it, the motion to

5  dismiss is set for hearing today.

6          THE COURT: Yes.

7          MR. VOGTLE: What I would propose is that we basically

8  treat this like a Rule 9019 settlement, lay all of this out,

9  send it out under your signature and, if nobody objects – I

10 mean, the case has been pending since last Wednesday.

11         MS. COOK: You all are going to pay the employees

12 through today.

13         MR. VOGTLE: Yeah, one other thing.  We are going to

14 pay the employees' wages, assuming this is for a week or two-

15 week period, reasonable wages through today's date.

16         THE COURT: Okay.

17         MR. VOGTLE: But after that, there is no further

18 obligation.

19         MS. COOK: That is correct, Your Honor, and it is just

20 the wages.  That doesn't include any –

21         MR. VOGTLE: No insiders will get any payment.

22         MS. COOK: And you are not going to – we are not going

23 to pay any federal taxes or anything?

24         MR. VOGTLE: No.  It is very important as part of this

25 settlement that we are not taking on any liabilities of the

1    company; we are simply acting as a secured lender, taking back

2    the collateral pledged to us.  We are not taking on any asset,

3    any stock or ownership or any continued desire to operate the

4    business.

5            MS. COOK: Yes, sir, that is correct.

6            MR. VOGTLE: And, Judge, let me clarify, we are not

7    paying any back wages.  All we are paying is what the current

8    wages are.

9            MS. COOK: Right, Your Honor, and there was a payroll

10   due Friday and then there would probably be wages due for one

11   day this week.  So you are looking at maybe six days.

12           MR. OSTEEN: Payroll is not going to start until

13   Wednesday, so it would include Wednesday, Thursday, Friday,

14   Saturday and today for a new cycle.

15           MR. VOGTLE: Can you represent for us how much that is?

16           MR. OSTEEN: It is going to be approximately six

17   thousand dollars.  That's just a guess.

18           MR. VOGTLE: Mr. Osteen, the gentleman –

19           THE COURT: Did you say two thousand or ten?

20           MR. VOGTLE: Six.

21           MS. COOK: Six.

22           MR. VOGTLE: Six thousand.  But we are going to ask

23   that that be documented and shown to us in such a way that we

24   can verify the hours are correct.

25           THE COURT: You are going to try to do the withholding

1  and stuff on that?

2        MR. VOGTLE: I think that is going to be the

3  responsibility of the company.  We are just a secured lender

4  here trying to get our collateral back.

5        THE COURT: So what you would do is you are just going

6  to pay a number equivalent to that.

7        MS. COOK: Yes, sir.

8        THE COURT: Maybe directed to the proper people.

9        MR. VOGTLE: Yes, sir.

10       MS. COOK: Yes, sir.

11       MR. VOGTLE: We are going to have to think through that

12  a little bit.  It is just something that has come up, but the

13  secured lender is not going to take on any independent

14  reporting to the IRS, withholding or –

15       THE COURT: Social Security or anything?

16       MS. COOK: No, sir, not at all.

17       THE COURT: Well, are you almost through, and then I

18  want to ask a couple of questions?

19       MS. COOK: I think –

20       MR. VOGTLE: Your Honor, I know you have some questions

21  but what I would propose is that Ms. Cook and I go back and

22  draft up the order in a form that is procedurally correct.  I

23  don't know what this animal is going to look like but it will

24  be something for a motion to dismiss for cause.  And then the

25  releases will not take effect until the order becomes final and

1  nonappealable.  And we will go ahead and start the liquidation

2  process now, immediately, posting the guard and kind of making

3  sure that the collateral is locked down and that the cash is

4  intercepted going forward.

5          That would be my thought.

6          THE COURT:  All right.  Here is the question:

7  Enforcement of the order, that is the title of my question, and

8  then here is basically the question.  There are a lot of

9  details in this thing and a lot of things that can go wrong and

10 a lot of things that are supposed to happen may not happen and

11 so forth.

12         And so here is the question:  Is the case going to be

13 dismissed and then the parties are left up to their own devices

14 to go and make all of this happen or is all of these things

15 going to happen first and then the case dismissed?  I do know

16 that you have a case going on back over at state court, but I

17 am just trying to look ahead a little bit.  You know, the old

18 saying if anything can go wrong, it usually does.

19         MR. VOGTLE:  Judge, I prefer to be here.

20         MS. COOK:  Yes, sir, it would be my preference that all

21 of this takes place and then the order.

22         THE COURT:  Dismissing?

23         MS. COOK:  And then it is dismissed, yes, sir.

24         MR. VOGTLE:  This is what this court does.

25         THE COURT:  Okay.  Well, that was going to be my

1    question.  Or was it just dismissed completely and you are back

2    over at state court.

3              MS. COOK: No, sir.  We prefer you.

4              THE COURT: Okay.  Well, I was, you know, in looking at

5    the case today, it was going to be a real, real close call to

6    abstention because it looked like a two-party dispute,

7    especially coming right on the heels of a TRO.

8              MS. COOK: Yes, sir.

9              THE COURT: And all of the things that go along with

10   abstention.  It was going to be very, very close to that.  So

11   I think you have done a good job of pulling it all together and

12   salvaging what may be – what the debtor can salvage out of it,

13   assuming that I looked, and we didn't have time to study the

14   law a lot, but assuming that the security agreement was

15   properly perfected, which was one of the initial questions

16   raised which we had undertaken to start looking at.  And, you

17   know, it appears on the citation of authorities that it is.

18             MR. VOGTLE: Judge, we represent to the court that,

19   when a car dealer is dealing with an inventory of cars, you

20   don't have to have it on the title.

21             THE COURT: No, that would completely slow down the car

22   sales business.

23             MR. VOGTLE: Other than that, we don't have any real

24   dispute about the documents.

25             THE COURT: Okay.  So that was going to be my initial

1    question.  If I found out that the security agreement was good,

2    unless I saw some case authority contrary therewith, I was

3    ninety-nine point nine-nine-nine percent – I shouldn't even say

4    this but it is true – was going to abstain, send it back.

5         MS. COOK: Yes, sir.

6         THE COURT: So I think you all have reached a good

7    agreement, and let me advise everybody here that all of these

8    obligations and things that have been laid out there now, then,

9    if the enforceability is going to be in this court, you are

10   looking at federal court.  You are looking at all of the

11   strength of the U.S. Marshals and so forth involved.  So

12   sometimes we can move a lot quicker over here than things can

13   move in state court.  You know, bankruptcy time is money, money

14   is time.   And so, you know, in state court sometimes you can

15   draw things out for years but we do it in days.

16        So everybody is encouraged, both creditor and debtors,

17   and insiders, to cooperate to the fullest because I think it is

18   a good settlement for everybody involved.   That security

19   agreement appears to be ironclad.  So everybody undertake

20   immediate cooperation.  As I say, this is now under federal

21   jurisdiction.

22        So with all of that having been said, anything else

23   from anybody?

24        MS. COOK: No, sir.

25        MR. VOGTLE: No, sir, Judge.  If we have any issues

1    with the implementation of the settlement, we will be right

2    back in front of you.

3          THE COURT: And we can do phone conferences, video

4    television phone. I will be out and in. I am traveling some

5    the next couple of weeks but I am always reachable by phone.

6    So I am just asking make this run as smoothly as can possibly

7    be done and everybody go their separate ways. Don't try to get

8    any more or any less than what you are entitled to.

9          MS. COOK: Yes, sir. Thank you.

10         THE COURT: We will be looking for the order. Thank

11    you all.

12         (Off the record briefly.)

13         MS. COOK: Your Honor, Cindy Slate-Cook for the debtor-

14    in-possession, D&G Auto Sale.

15         MR. VOGTLE: And Jesse Vogtle, here for Auto Finance

16    Partners. My colleague, Jeremy Retherford, is a lawyer with my

17    firm, is here, too. We have Richard Blythe for the Bankruptcy

18    Administrator's Office. Do you need witnesses, too?

19         THE COURT: Well, what does the Court Reporter – you

20    know, by the way, if this thing falls through, you all have put

21    something on the record. It might not hurt to show who is

22    here.

23         MR. VOGTLE: Les Cohen is a principal with Auto Finance

24    Partners and is here representing their interest. We have Ryan

25    Livingston who is actually a principal with the debtor, is here

1   to give testimony.  And we had two other witnesses.

2           THE COURT: Ms. Cook, would you please name them?

3           MS. COOK: Yes, Your Honor.  We have Mr. and Mrs.

4   Elrod.  We have Mr. Lynn Osteen, O-S-T-E-E-N, and Mr. Robert

5   Cline.  "C" or "K?"

6           MR. CLINES: Clines, C-L-I-N-E-S.

7           THE COURT: I think you said Mr. and Mrs. Elrod but

8   would you give their names?

9           MS. COOK: Yes, sir.  Glenn and Diana Elrod.

10          THE COURT: Okay.  And then this last individual that

11   just came in, do we need to get her on here?

12          MR. VOGTLE: Judge, this is Samantha Delaney.  She is

13   one of the customers who received the competing letters from

14   the secured lender and also from the debtor.  She is here to

15   give testimony for the lender.

16          THE COURT: Okay.  Well, I think it is important that

17   we have everybody down so nobody can say surprise.  Let me just

18   open it up.  Does anybody, especially the witnesses and the

19   principals out in the court, have any questions about what the

20   attorneys have represented is the settlement?

21          (No response.)

22          THE COURT: Okay.  I think it is fairly clear-cut.

23   Well, good, then, you all get me the order and we will get it

24   signed.

25          MS. COOK: Thank you, Judge.

1          THE COURT: Thank you.  We will be in recess.

2          (Off the record at 1:43 p.m.)

# C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/ Patricia Basham
Patricia Basham, Transcriber
Date:  May 23, 2008